UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDEARTH GUARDIANS,<br>　　　Plaintiff<br><br>　　　v.<br><br>DEB HAALAND[1], Secretary, U.S.<br>Department of the Interior, *et al.*,<br>　　　Defendants | Civil Action No. 20-1035 (CKK) |

MEMORANDUM OPINION
(September 30, 2021)

Plaintiff WildEarth Guardians ("Plaintiff") brings this action against Defendants Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior ("Secretary"), Martha Williams, in her official capacity as Principal Deputy Director of the U.S. Fish and Wildlife Service, and the U.S. Fish And Wildlife Service (the "Service") (collectively "Defendants"). Plaintiff petitioned the Service to list four freshwater aquatic species—the Rio Grande chub, the Rio Grande sucker, the sturgeon chub, and the sicklefin chub—as threatened or endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. § 1533. Plaintiff's petitions triggered a 12-month statutory deadline for the Service to determine whether or not listing the species as threatened or endangered is "warranted." 16 U.S.C. § 1533(b)(3). There is no dispute that the Service has failed to meet this 12-month deadline with respect to each petition. The only issue for the Court to decide is the appropriate remedy for the Service's failure to comply this statutory deadline.

Presently before the Court are Plaintiff's [21] Motion for Summary Judgment and Defendants' [23] Cross-Motion for Summary Judgment. Plaintiff seeks injunctive relief

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Deb Haaland, in her official capacity as Secretary of the Interior, and Martha Williams, in her official capacity as Principal Deputy Director of the U.S. Fish and Wildlife Service, are substituted as defendants in this case.

compelling the Service to complete and publish the 12- month findings and listing determinations for the four species at issue within nine months of the close of summary judgment briefing (or, October 8, 2021). Defendants argue that Plaintiff's proposed deadline is not practicable in light of staffing and budget constraints, the Service's workload, and its other listing priorities. Defendants indicate that pursuant to the Service's listing priorities, it intends to complete the 12-month findings for the Sicklefin Chub and Sturgeon Chub by September 30, 2023, and for the Rio Grande Chub and Rio Grande Sucker by June 14, 2024.

Upon review of the pleadings,[2] the relevant legal authority, and the record as a whole, the Court concludes that Defendants' proposed remedy is the more equitable solution. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment to the extent it seeks injunctive relief compelling Defendants to issue 12-month findings within nine months of the close of summary judgment briefing. The Court **GRANTS** summary judgment to Defendants and shall order Defendants to comply with the dates they propose for determining whether or not listing the four fish species at issue as threatened or endangered is "warranted."

---

[2] The Court's consideration has focused on the following documents:
- Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 21;
- Defendants' Cross-Motion for Summary Judgment & Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Cross-Mot. & Opp'n"), ECF No. 23;
- Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment and Response in Opposition to Defendants' Cross-Motion for Summary Judgment ("Pl.'s Reply & Opp'n"), ECF No. 25;
- Defendants' Reply in Support of Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. 29;
- Plaintiff's Notice of Supplemental Authority ("Pl.'s Suppl. Auth."), ECF No. 31;
- Defendants' Response to Plaintiff's Notice of Supplemental Authority ("Defs.' Resp. to Pl.'s Suppl. Auth."), ECF No. 32;
- Plaintiff's Notice of Supplemental Information ("Pl.'s Suppl. Info."), ECF No. 33;
- Defendants' Response to Plaintiff's Notice of Supplemental Information ("Defs.' Resp. to Pl.'s Suppl. Info."), ECF No. 34; and
- Defendants' Notice of Supplemental Authority ("Defs.' Suppl. Auth."), ECF No. 35.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision on the pending motions. *See* LCvR 7(f).

## I. BACKGROUND

### A. Statutory Background

The Endangered Species Act ("ESA") "provide[s] a means whereby the ecosystem upon which endangered species and threatened species depend may be conserved" in an effort "to conserve endangered species and threatened species[.]" 16 U.S.C. § 1531(b), (c)(1). As the Supreme Court has explained, the "plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost. This is reflected not only in the stated policies of the Act, but in literally every section of the statute." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978). To accomplish this goal, the ESA provides two methods by which a species can be listed as "endangered" or "threatened": the internal process and the petition process. 16 U.S.C. § 1533(a), (b)(3). The latter of those methods is implicated in this case.

Under the ESA, an interested citizen may petition the Service in accordance with 5 U.S.C. § 553(e) to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3). Upon receipt of a petition, the Secretary must, "[t]o the maximum extent practicable, within 90 days after receiving [the] petition . . . make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action *may be warranted*." 16 U.S.C. § 1533(b)(3)(A) (emphasis added). If the Service concludes in its "90-day finding" that the listing requested in the citizen's petition "may be warranted," then it must "promptly commence a review of the status of the species concerned." *Id.* The statute then requires that, "[w]ithin 12 months after receiving a petition . . . present[ing] substantial information," that listing "may be warranted," the Service must make a finding that the petitioned action is: (a) warranted; (b) not warranted or (c) warranted but further action is precluded by other pending listing proposals and expeditious progress is being made to list and delist species (referred to as a "warranted but precluded"

finding). § 1533(b)(3)(B)(i)–(iii).  This so-called "12-month finding" must be made "solely on the basis of the best scientific and commercial data available to [the Secretary] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect [the] species." § 1533(b)(1)(A).

If the Service concludes in its 12-month finding that listing a species is "warranted," then the Service must publish a rule proposing the species' listing as endangered or threatened. § 1533(a)(3)(A), (b)(3)(B)(ii), (c).  "Listing a species as threatened or endangered triggers substantive and procedural protections under the ESA." *WildEarth Guardians v. Haaland*, --- F. Supp. 3d ---, 2021 WL 4263831, at *1 (C.D. Cal. Sept. 20, 2021) (citing 16 U.S.C. §§ 1536, 1538). If the Service concludes that the petitioned action is "not warranted," the listing process terminates. The Service's conclusion that a petitioned listing is "warranted but precluded," means that listing the species is warranted, but "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action. . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species" and that "expeditious progress is being made to add qualified species" to the lists of threatened and endangered species, and to remove species that are no longer qualified.  § 1533(b)(3)(B)(iii).  Species for which the proposed listing is deemed "warranted but precluded" are also referred to as "candidate species."  *See* Defs.' Cross-Mot. & Opp'n at 4.

Pursuant to the ESA's provision for "citizen suits," "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary. " 16 U.S.C. § 1540(g)(1)(C).  "This includes an injunctive action to force the Secretary to comply with the above deadlines." *Ctr. for Biological Diversity v. Haaland*, No. 20 C 1227,

2021 WL 4169567, at *2 (N.D. Ill. Sept. 14, 2021).  This provision grants federal district courts jurisdiction "to enforce any such provision . . . or to order the Secretary to perform such act or duty, as the case may be."  § 1540(g)(1).

### B. Factual Background

Plaintiff WildEarth Guardians is a non-profit, 501(c)(3) membership organization with approximately 275,000 members nationwide.  Compl. ¶ 9, ECF No. 1.  Plaintiff filed four petitions[3] with the Service, seeking to list four species as threatened or endangered under the ESA.  *Id.* ¶¶ 33, 44, 51.  The Court shall first address the factual background regarding each petition, and then shall present background information about the Service's present caseload and its process to address a significant backlog of listing petitions.

#### 1. Plaintiff's Petitions to List Species as Threatened or Endangered

##### a. Rio Grande Chub

The Rio Grande Chub (*Gila pandora*) is a small fish located primarily in the Rio Grande Basin in Colorado, New Mexico, and Texas.  FWS_0029.[4]  Plaintiff submitted a petition to list the Rio Grande Chub as "threatened" or "endangered" to the Service on September 27, 2013.  *See* FWS_0028–48.  Plaintiff indicated in its petition that listing the Rio Grande Chub as "threatened or endangered" is "necessary to prevent its extinction," due to "the multiple and cumulative threats of habitat destruction and modification, predation from non-native species, and climate change.  FWS_0044.

---

[3] Plaintiff's Complaint included claims related to a fifth species, the narrow-foot hygrotus diving beetle (*Hygrotus diversipes*).  Compl. ¶¶ 53–59.  The parties resolved their dispute regarding that species, and so claims related to it are no longer at issue in the pending motions.  *See* Joint Motion at 1–2, ECF No. 19; Order, ECF No. 20.

[4] Citations with the prefix "FWS" refer to the pages of the parties' Joint Appendix, filed at ECF No. 30.

The Service received Plaintiff's petition to list the Rio Grande Chub on September 30, 2013. FWS_0049; *see* Defs.' Cross-Mot. & Opp'n Ex. C, Declaration of Shawn Sartorius ("Sartorius Decl.") ¶ 5, ECF No. 23-4. On March 16, 2016, the Service published its 90-day finding, concluding that Plaintiff's petition to list the Rio Grande Chub as endangered or threatened presented substantial scientific and commercial evidence indicating that the species "may warrant" protection under the ESA. *See* FWS_0049, 0056 FWS_0070. To date, the Service has not made a 12-month finding. *See* Answer ¶ 34, ECF No. 13 (admitting that Defendants have not completed 12-month finding for the Rio Grande Chub). The Service's deadline to issue its 12-month finding was September 30, 2014, § 1533(b)(3)(B), meaning that its determination is now seven years overdue.

### b. Rio Grande Sucker

The Rio Grande Sucker (*Catostomus plebeuis*) is a fish found in the Rio Grande River and its tributaries in southern Colorado, New Mexico, and Mexico. FWS_0075. Plaintiff submitted a petition to list the Rio Grande Sucker as "threatened" or "endangered" to the Service on September 29, 2014. *See* FWS_0074–110. Plaintiff indicated in its petition that listing the Rio Grande Sucker is warranted because it is threatened by "present and threatened destruction, modification and curtailment of habitat and range; the inadequacy of existing regulatory mechanisms; and other natural or manmade factors affecting its continued existence." FWS_0109.

The Service received Plaintiff's petition to list the Rio Grande Sucker on October 3, 2014. FWS_0118; Sartorius Decl. ¶ 5. On March 16, 2016, the Service published its 90-day finding, concluding that Plaintiff's petition presented substantial scientific and commercial evidence indicating that the Rio Grande Sucker "may warrant" protection under the ESA. *See* FWS_0143

To date, the Service has not made a 12-month finding. *See* Answer ¶ 45 (admitting that Defendants have not completed 12-month finding for the Rio Grande Sucker). The Service's deadline to issue its 12-month finding was October 3, 2015, § 1533(b)(3)(B), meaning that its determination is now approximately 6 years overdue.

### c. Sicklefin Chub and Sturgeon Chub

The Sicklefin Chub (*Macrhybopsis meeki*) and Sturgeon Chub (*Macrhybopsis gelida*) are freshwater fish that inhabit the Missouri and Mississippi Rivers and their tributaries. Defs.' Cross-Mot. & Opp'n Ex. B, Declaration of Drew Becker ("Becker Decl.") ¶ 4, ECF No. 23-3. Their native range stretches across 13 states including Montana, Wyoming, North Dakota, South Dakota, Nebraska, Iowa, Missouri, Kansas, Illinois, Kentucky, Tennessee, Arkansas, and Mississippi. *Id.* Plaintiff indicated in its listing petition that both species are in decline due to severe habitat changes, in large part due to the construction and operation of mainstream dams. FWS_0148; *see also* Becker Decl. ¶ 4

Plaintiff submitted a petition to list the Sicklefin Chub and Sturgeon Chub as "threatened" or "endangered" to the Service on August 11, 2016. *See* FWS_0147–217. The Service received the petition on August 15, 2016. FWS_0218; Becker Decl. ¶ 6.

On December 20, 2017, the Service published its 90-day finding, concluding that Plaintiff's petition to list the Sicklefin Chub and Sturgeon Chub presented substantial scientific and commercial evidence indicating that the species "may warrant" protection under the ESA. *See* FWS_0237; Becker Decl. ¶ 6. To date, the Service has not made a 12-month finding as to either species. *See* Answer ¶ 52 (admitting that Defendants have not completed 12-month finding for the Sturgeon Chub or Sicklefin Chub). The Service's deadline to issue its 12-month finding was August 15, 2017, § 1533(b)(3)(B), meaning that its determination is now four years overdue.

2. **The Service's Caseload and National Listing Workplan**

The Service concedes that it has a non-discretionary obligation to make a "12-month finding" when it receives a citizen petition seeking to list a species as endangered or threatened. Defs.' Cross-Mot. & Opp'n at 1. The Service indicates, however, that a significant backlog of listing petitions, together with budget and staffing constraints has prevented it from issuing listing decisions within the required 12-month timeline. *See id.* at 6–7. For example, the Service indicates that between 2007 and 2010, it received petitions to list 1,187 species, and that completing 12-month findings on these petitions "required far more funding" that it had available. Defs.' Cross-Mot. & Opp'n Ex. A, Declaration of Gary Frazer ("Frazer Decl.") ¶ 12, ECF No. 23-2.

To address this backlog, the Service developed, through a notice and comment process, a methodology for prioritizing listing petitions. *See* Methodology for Prioritizing Status Reviews and Accompanying 12-Month Findings on Petitions for Listing under the Endangered Species Act, 81 Fed. Reg. 49,248 (July 27, 2016) ("Prioritization Methodology"). Under the Prioritization Methodology, the Service assigns each petition requiring a 12-month finding to a regional office and to one of five priority bins: "(1) The species is critically imperiled; (2) strong data are already available about the status of the species; (3) new science is underway that would inform key uncertainties about the status of the species; (4) conservation efforts are in development or underway and likely to affect the status of the species; or (5) the available data on the species are limited." Frazer Decl. ¶ 17. Within each geographic region, 12-month findings with lower bin numbers have a higher priority (and therefore are scheduled to be reviewed sooner) than 12-month findings with higher bin numbers. *Id.*

In addition to developing the Prioritization Methodology, the Service created a National Listing Workplan (the "Workplan") to "address[ ] the backlog of outstanding listing

determinations." Defs.' Cross-Mot. & Opp'n at 7. The Service published its first Workplan in September 2016. Frazer Decl. ¶ 16. The most recent version of the Workplan was published in January 2021.[5] The Workplan applies the Prioritization Methodology to determine the order in which listing petitions will be considered, but also takes into account other factors such as the "annual available funding, staffing resources, nondiscretionary requirements such as court orders and settlement-agreement requirements, and the listing priority numbers of existing candidate species." *See* Prioritization Methodology, 81 Fed. Reg. at 49,250. The Workplan indicates the type of action that needs to be completed by the Service (e.g., a "12-month finding"), the "Priority Bin" ranking, the geographical region to which the petition is assigned, and the projected fiscal year in which the action will be completed. *See* Jan. 2021 Workplan. The Service indicates that "[o]ne objective in implementing and developing the Workplan" is to "balance [its] annual workload between the various types of listing and critical habitat actions, including 90-day petition findings, 12-month petition findings, proposed and final listing determinations, and proposed and final critical habitat designations." Frazer Decl. ¶ 18.

The "12-month findings" for the four species at issue in this case are included as action items on the most recent version of the Workplan. The Workplan assigns the Sturgeon Chub and Sicklefin Chub to the "Mountain-Prairie Region," Frazer Decl. ¶ 10, and categorizes both as "priority bin 3" species, and "projects" that the Service will complete the 12-month listing decisions by the end of fiscal year 2023. *See* Jan. 2021 Workplan at 17; Frazer Decl. ¶ 31; Becker Decl. ¶ 9. The Workplan also assigns the Rio Grande Chub and Rio Grande Sucker to "priority

---

[5] At the time the parties completed briefing on the pending cross-motions, the most recent version of the Workplan was published in May 2019. An updated Workplan has since been published, *see* Nat'l National Domestic Listing Workplan: Fiscal Years 21-25, 5-year Workplan (Jan. 2021), https://www.fws.gov/endangered/esa-library/pdf/National-Listing-Workplan-FY21-FY25.pdf (hereinafter "Jan. 2021 Workplan").

bin 3," and projects that the 12-month findings will be completed by the end of fiscal year 2024. *See* Jan. 2021 Workplan at 17. The Rio Grande Chub and Rio Grande Sucker are assigned to the Service's "Southwest Region," Frazer Decl. ¶ 10.

The Service indicates that completing review of the petitions included in the Workplan will require substantially all of the resources in the agency's budget allocated for reviewing listing petitions. *See* Frazer Decl. ¶ 9.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record. . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The court's review of agency action under the citizen suit provision of the ESA is subject to the same standard of review as the APA. *See City of Las Vegas v. Lujan*, 891 F.2d 927, 932 (D.C. Cir. 1989); *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011) ("Our review of an agency's compliance with the ESA is governed by the [APA]."). The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). It requires courts to

"hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise."  *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C.2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The reviewing court "is not to substitute its judgment for that of the agency."  *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015).

### III.   DISCUSSION

The ESA imposes a statutory obligation on the Service to make a timely 12-month finding, indicating whether listing a species as "endangered" or "threatened" is "warranted" or not.  Pl.'s Mot. at 14; Defs.' Cross-Mot. & Opp'n at 10.  The parties do not dispute the Service failed to make timely 12-month findings for each of the four species at issue here.  *See* Defs.' Cross-Mot. & Opp'n at 10.  Rather, the only remaining issue in dispute is the appropriate remedy to address the Service's failure to comply with the ESA's mandatory deadline.  Plaintiff seeks an order compelling Defendants to publish 12-month findings as to the four species at issue here by October 8, 2021 (nine months after the close of summary judgment briefing).  Pl.'s Mot. at 10.  Defendants request that they be allowed until the end of FY2023 to finalize 12-month findings for the Sicklefin Chub and Sturgeon Chubs, and until June 14, 2024 to finalize 12-month findings for the Rio Grande Chub and Rio Grande Sucker.  *See* Defs.' Cross-Mot. & Opp'n at 30.  For the reasons set forth below, the Court finds that Defendants' proposed remedy supplies a more equitable solution, accounting for the balance of harms to each party and the public interest.  Before addressing the parties' arguments about the appropriate remedy, the Court examines the scope of its equitable discretion to develop a remedy for the statutory violation at issue in this case.

### A. Scope of the Court's Equitable Discretion

"[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barceo*, 456 U.S. 305, 312 (1982) (collecting cases). Generally, when a plaintiff proves a violation of law, there is "no separate need to show irreparable injury," as irreparable injury is "merely one possible basis for showing the inadequacy of the legal remedy." *Nat'l Mining Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir .1998) (internal citation and quotation marks omitted). "Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a 'nice adjustment and reconciliation' between the competing claims." *Weinberger*, 456 U.S. at 312 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944)). The Court must "balance[ ] the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Yakus v. United States*, 321 U.S. 414, 440 (1944). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Hecht Co.*, 321 U.S. at 329.

Moreover, when "exercising their sound discretion," courts of equity "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312 (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941)). The Supreme Court has cautioned, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Id.* at 313 (citing *Tenn. Valley Auth.*, 437 U.S. at 193; *Hecht Co.*, 321 U.S. at 329).

The "general equitable principles reflect a hundred years of jurisprudence and Congress is presumed to legislate against this background." *Ctr. for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113, 116 (D.D.C. 2002), *vacated on other grounds*, *Ctr. for Biological Diversity v. England*, 2003 WL 179848 (D.C. Cir. Jan. 23, 2003). Therefore, a trial court's discretion is "displaced only by a clear and valid legislative command." *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) (internal citation and quotation marks omitted).

Section 1540 of the ESA provides that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be." 16 U.S.C. § 1540(g). This section "does not . . . curb a court's discretion" when issuing injunctive relief, nor does it "tell courts what should occur when the Service misses a nondiscretionary statutory deadline." *Ctr. for Biological Diversity*, 2021 WL 4169567, at *6; *see also Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 178 (D.D.C. 2006) ("Congress did not limit district courts' authority to provide equitable relief under the ESA, and indeed, specifically reserved their traditional authority to fashion appropriate equitable relief." (internal citations and quotation marks omitted)). In sum, the ESA "does not mandate specific injunctive relief for missed statutory deadlines." *Ctr. for Biological Diversity*, 2021 WL 4169567, at *6. Although Plaintiff contends that the Court's equitable discretion is "limited to issuing the relief considered necessary to ensure prompt compliance with the act," Pl.'s Mot. at 19 (citing *Ctr. for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113, 119 (D.D.C. 2002)), that does not appear to contradict the weight of legal authority indicating that the Court has broad discretion to determine the appropriate remedy upon review of the specific facts of the case. Accordingly, the Court proceeds to its ordinary task of considering

the balance of hardships and the public interest with respect to the relief proposed by each party. *See Ctr. for Biological Diversity*, 2021 WL 4169567, at *6.

### B. Analysis of Equitable Remedy

The Court now moves to its consideration of the equitable remedy in this case, assessing the balance of hardships and the public interest with respect to each party's proposal. Overall, the Court finds that these considerations weigh in favor of adopting Defendants' proposed timeline.

Another court confronting the same question of the appropriate remedy available for the Service's failure to comply with the ESA's 12-month finding deadline began its analysis with the following point: "[I]t would be imprudent to set a deadline that the Service cannot feasibly comply with . . . Plaintiffs' proposed deadline . . . would require the Service to reorder priorities and shift resources away from other projects and towards [the plaintiff's listing petition]." *Ctr. for Biological Diversity*, 2021 WL 4169567, at *7. This Court shall also decline to impose a deadline with which the Service cannot comply. Plaintiff's proposed remedy—compelling Defendants to complete 12-month findings for four species by October 8, 2021—is plainly impracticable. Twelve-month findings require expenditure of significant resources and time. *See* Frazer Decl. ¶¶ 4–8, 22. At this point, it would be infeasible—if not, impossible—for Defendants to comply with the deadline Plaintiff requests. *See* Defs.' Cross-Mot. & Opp'n at 17 (noting that the Service does "not anticipate having available funding or staff resources to add these 12-month findings to its FY2021 planned workload"). It would be inequitable and inappropriate for the Court to order an injunction with which Defendants cannot comply. *See Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987).

Even if Plaintiff had instead requested an order compelling Defendants to complete these findings within nine months of the Court's decision on the parties' cross-motions for summary

judgment, *see* Pl.'s Reply at 8 n.3, that too would create an infeasible deadline, in light of the practical limitations on time, money, and manpower, described more below. The Court will not exercise its equitable discretion to order an agency to comply with an order that is impossible to perform. *Nat. Res. Def. Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975) ("The sound discretion of [a] . . . court does not embrace enforcement . . . of a party's duty to comply with an order that calls [on] him 'to do an impossibility.'"); *Thomas*, 658 F. Supp. at 172 (concluding that it would "be inappropriate to set an infeasible schedule in order to punish a delinquent agency").

It is well-within the Court's equitable discretion to account for the practical limitations confronting the Service when determining a remedy for its failure to comply with a statutory deadline. *See Train*, 510 F.2d at 713 ("[I]t is possible that budgetary commitments and manpower demands required to [comply with a statutory deadline] are beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs."). Defendants note principally that the Service's budget, including its budget specific to listing petitions is determined by Congress, which caps the annual spending for "listing and critical habitat" functions within the Service. Frazer Decl. ¶¶ 5, 8 ("Given the spending cap, the Service's listing budget is limited, which in turn limits the number of actions we can fund and carry our in a fiscal year."); *see* Defs.' Cross-Mot. & Opp'n Ex. D, Excerpts from Appropriations Legislation for F2014 through FY2020.

Plaintiff contends that "underfunding cannot excuse" the Service from complying with the ESA's listing deadlines—particularly when, according to Plaintiff, the Department of the Interior "underfunded" the Service's listing program for the 2020 and 2021 fiscal years. Pl.'s Mot. at 22–24; Pl.'s Mot. Ex. 9, DOI Budget Justifications FY2021, at 8, 13, ECF No. 21-10; *see W. Watersheds Proj. v. U.S. Fish & Wildlife Serv.*, No. 4:10–CV–229–BLW, 2012 WL 369168, at *16 (D. Idaho Feb. 2, 2012) (observing that the Service's "financial pinch" is not being imposed

"entirely from the outside" because the Department of the Interior "has limited its budget requests and asked for spending caps on listing activities").

But the thrust of legal authority in this jurisdiction and others indicates that the Court can (and should) take budget and resource limitations into consideration to determine an equitable remedy for the agency's failure to complete with a statutory deadline.[6] *See, e.g.*, *Cal. Native Plant Soc'y v. Norton*, No. Civ. A. 03-1540 (JR), 2005 WL 768444, at *7 (D.D.C. Mar. 24, 2005) ("Stripped to their essence, [the Service's] basic explanations for why listing the Spineflower and other species was warranted but precluded were that [the Service] had statutorily mandated deadlines, court-ordered actions, high priority listing activities, and a very limited budget. Despite protests from the plaintiffs, all of these explanations are legitimate."); *Ctr. for Biological Diversity*, 2021 WL 4169567, at *7 ("[T]he Court finds it to be self-evident that overall budgetary constraints affect the entire scope of the Service's work."); *Friends of Wild Swan v. U.S. Fish & Wildlife Serv.*, 945 F. Supp. 1388, 1401 (D. Or. 1996) (recognizing that a "lack of funds, when Congress expressly prohibits expenditures for listing species, can excusably delay mandatory listing determinations"). Here, Defendants have demonstrated that budget constraints limit the number of 12-month determinations (and other work) that can be completed in a given year.

---

[6] Plaintiff cites other cases for the proposition that underfunding and a heavy workload should not be excuses for failure to comply with a statutory deadline. Pl.'s Mot. at 22–23; *see, e.g. Ctr. for Biological Diversity v. Norton*, 163 F. Supp. 2d 1297, 1301 (D.N.M. 2001); *Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 749 (W.D. Tex. 1997). But those cases were decided before the Workplan was established to prioritize listing and final rules based on urgency. More recently, district courts "have been less likely to order specific performance with swift and unfeasible deadlines, taking into account 'the Service's current staffing, workloads, budget, and competing agency priorities, including other court-ordered deadlines.'" Defs.' Reply Ex. A, Order at 6 n.3, *Ctr. for Biological Diversity et al. v. U.S. Fish & Wildlife Serv.*, No. CV-1900354 (D. Ariz. Nov. 24, 2021) (citing *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 2018 WL 6067546, *6 (N.D. Cal. 2020); *Citizens for Pennsylvania's Future v. Wheeler*, No. 19-CV-02004-VC, 2020 WL 3481425, *10 (N.D. Cal. 2020))

In addition to limited funding, the Service's workload is quite substantial. The Workplan in effect at the time the parties completed briefing on the pending motions included 150 12-month findings and 10 proposed listing and critical habitat rules for FY2021 through FY2023. Defs.' Reply at 5; Frazer Decl. ¶ 30. The Service's Southwest Region, responsible for completing the 12-month findings for the Rio Grande chub and Rio Grande sucker, was "working on 12-month findings (and potential associated rulemakings) for 46 species, proposed listing rules with critical habitat for eight species, final critical habitat rules for four species, and final listing and critical habitat rules for two species through FY2023." Defs.' Reply at 5; Frazer Decl. ¶¶ 28–29. The Mountain-Prairie Region, tasked with the 12-month findings for the Sturgeon Chub and Sicklefin Chub was "working on 12-month findings for 17 species, one proposed listing and critical habitat rule, and final listing and critical habitat rules for 3 species." Defs.' Reply at 5; Frazer Decl. ¶ 28.

Moreover, Defendants notes that 12-month findings require a significant amount of time and resources to complete. *See* Becker Decl. ¶ 17 (estimating that data collection and scientific assessment regarding the Sicklefin Chub and Sturgeon Chub will take about 18 months); *id.* ¶ 11 (describing the 12-month finding for the same species as "complex and large in scope," requiring collaboration among federal, state, and private actors across 13 states); Sartorius Decl. ¶ 9 (estimating that the collection and assessment of information about the Rio Grande Chub and Rio Grande Sucker will take at least 12 months). According to Defendants, mandating a "rushed decision" about listing these species would deprive the Service of the time necessary to "gather and analyze the required science and data, and prepare a thorough and defensible status assessment for each species." Defs.' Cross-Mot. & Opp'n at 17.

Plaintiff responds that, in its listing petitions, it "has already compiled and presented a *substantial* amount of scientific literature and date on these four freshwater fishes." Pl.'s Opp'n

17

& Reply at 4 (citing FWS_0028-48 (Rio Grande Chub petition); 0074-117 (Rio Grande Sucker petition); 0147-217 (Sturgeon Chub and Sicklefin Chub petition)). Plaintiff, therefore, contends that Defendants' "purported desire for more research now does not render prompt compliance with the ESA's 12-Month listing determination impossible or infeasible." *Id.* at 7. But the ESA requires the Service to consider "the best scientific and commercial data available to [the Secretary] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect [the] species." § 1533(b)(1)(A). Contrary to Plaintiff's speculation that the Service is exceeding its statutory obligation by searching for the "best *possible* data," *see* Pl.'s Mot. at 20, the record before the Court suggests that it is instead ensuring that its analysis complies with the statutory mandate that its 12-month finding be supported by the best available scientific information. *See, e.g.*, Becker Decl. ¶¶ 9, 10, 13–19, Sartorius Decl. ¶ 9.

The Court must also consider the effects of each parties' proposed remedy—both in practical terms, and in fulfilling the conservation goals of the ESA. Plaintiff contends that "Congress' intent to halt and reverse the trend toward species extinction," must inform the remedy in this case. Pl.'s Mot. at 16 (quoting *Am. Lands Alliance v. Norton*, 242 F. Supp. 2d 1, 4 (D.D.C. 2003)). Allowing Defendants substantially more time to make the 12-month findings—which are already years overdue—"would contravene congressional intent that time is of the essence in listing imperiled species." *Id.* at 17 (citing *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 1902703, at *3 (N.D. Cal. 2008)). Moreover, by delaying the 12-month findings, the Service prevents subsequent steps from being taken to protect endangered species if the Service concludes that they indeed should be listed as "endangered." *Id.* at 18 ("By failing to list species in the first place, the Service negates the overall effectiveness of the ESA."). Plaintiff

posits that had the Service adhered to the ESA's 12-month deadline in response to its four petitions, "each of these imperiled fish could have already received full ESA protections[.]" *Id.*

But Plaintiff's argument is limited to the effect of Defendants' delayed findings on the four particular species at issue in this case. To be sure, the Court recognizes that the Service's delayed actions with respect to these four fish species may negatively affect conservation efforts with respect to those specific species. But Defendants indicate that Plaintiff's requested relief would have the practical effect of moving Plaintiff's four petitions ahead of other tasks in the Workplan—including those that the Service has classified as a higher priority. *See, e.g.*, Frazer Decl. ¶ 18 ("Prioritizing petition findings, for example, over other ESA listing workload priorities would delay or altogether prevent us from completing the work needed to issue proposed and final listing rules for species determined to warrant listing, including species on our candidate list."); *id.* ¶ 23 ("Prioritizing petition findings over other ESA listing workload priorities would delay or altogether prevent us from completing the work needed to issue proposed and final listing rules for species determined to warrant listing, including species on our candidate list."). This disruption, in turn, would actually frustrate the Service's conservation efforts by turning Defendants' attention away from more urgent priorities than the 12-month findings at issue in this case. The Court is more persuaded that Defendants' proposed deadlines for completing the 12-month findings at issue in this case better accounts for competing demands on its limited resources and "advances the ESA's overall purpose in protecting endangered or threatened species in need of conservation. " *Ctr. for Biological Diversity*, 2021 WL 4169567, at *9.

As another federal district court recently explained, "[t]he Service's Workplan does not represent an arbitrary ranking choice. Rather, deciding which petitions and projects to address with the Service's limited resources requires a high level of technical expertise that courts best leave to

19

the Service because those determinations are within its expertise." *Ctr. for Biological Diversity*, 2021 WL 4169567, at *8 (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976)). That court, moreover, noted that Congress explicitly directed the Secretary to establish "a ranking system to assist in the identification of species that should receive priority review[,]" 16 U.S.C. § 1533(h)(3), "which the Service has done through its prioritization methodology." *Id.* To interfere in that prioritization—as Plaintiff here asks the Court to do—would merely "elevate the [plaintiff's] petition above other species, including those that the Service designates as a higher priority from a conservation standpoint." *Id.* The Court will not exercise its equitable discretion to produce such a result.

In sum, the Court finds that Defendants' proposed remedy best balances the Service's competing priorities in light of practical limitations on its resources and better advances the ESA's overall purpose to protect endangered and threatened species.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Cross-Motion for Summary Judgment. As set forth in the accompanying Order, the Court shall order Defendants to submit to the Federal Register their 12-month findings for the Sicklefin Chub and Sturgeon Chub on or before September 30, 2023, and to submit to the Federal Register their 12-month findings for the Rio Grande Chub and Rio Grande Sucker on or before June 14, 2024.

An appropriate Order accompanies this Memorandum Opinion.

___/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date:** September 30, 2021